IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATHALIE TOURE-DAVIS )
)
    Plaintiff, )
)
       v. )   Civil Action No. WGC-13-916
)
CHARLES G. DAVIS )
)
    Defendant. )
)

**MEMORANDUM OPINION**

Plaintiff Nathalie Toure-Davis ("Plaintiff") initiated this lawsuit against her former husband, Defendant Charles G. Davis ("Defendant"), seeking to enforce Defendant's obligation to support Plaintiff in accordance with an Affidavit of Support he signed after the couple married. The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment. *See* ECF No. 35 ¶ 7[1]. Pending and ready for resolution are Plaintiff's motion for partial summary judgment on the issue of liability (ECF No. 24) and Defendant's cross-motion for summary judgment (ECF No. 28).[2] No hearing is deemed necessary and the court now rules pursuant to Local Rule 105.6 (D. Md. 2011).

**BACKGROUND**

Plaintiff and Defendant married on July 29, 1998 in Maryland. Plaintiff is a citizen of Cote D'Ivoire and Defendant is a citizen of the United States. ECF No. 16 ¶ 1. On the same day

---

[1] This case was referred to the undersigned on October 31, 2013. *See* ECF No. 37.

[2] Defendant filed a second cross-motion for summary judgment (ECF No. 38) and subsequently filed a *corrected* second cross-motion for summary judgment (ECF No. 40). Defendant omitted the names of the parties in the caption when he filed the second cross-motion for summary judgment. *See* ECF No. 38 at 1. In the joint status report of October 18, 2013 Defendant advised he would be filing "a supplemental motion in light of discovery responses." ECF No. 35 at 2. The court therefore shall treat the *corrected* second cross-motion for summary judgment as a supplement to Defendant's cross-motion for summary judgment.

1

as their marriage, Plaintiff and Defendant signed an ante-nuptial agreement. *See* ECF No. 29-1. Paragraph 9 of this agreement provided that

> [i]f the parties separate from one another at any time following their marriage, for any reason, it is their mutual desire that each shall maintain and support himself or herself separately and independently from the other. Accordingly, each party releases and discharges the other, absolutely and forever, for the rest of his or her life, from any and all claims and demands for alimony or support, excluding child support, either <u>pendente lite</u> or permanently. This Agreement is not subject to modification by any court.

*Id.* at 4.

Following their marriage Plaintiff began the application process to obtain an immigrant visa and, eventually, Legal Permanent Resident status ("LPR"). As part of that process, Defendant signed a Form I-864 affidavit of support ("Form I-864") for Plaintiff. While neither side provided the actual document, both parties agree that Defendant signed a Form I-864 on October 28, 1999. *See* ECF No. 24 at 1; ECF No. 29 at 1. The Form I-864 obligates the sponsor to provide the immigrant any support necessary to maintain the immigrant's income at a minimum of 125 percent of the Federal Poverty Guidelines. Plaintiff attained LPR status on March 29, 2001. ECF No. 16 at 1.

On the same day that Plaintiff was granted LPR status, she entered into a separation agreement with Defendant. Per that document Defendant agreed to provide Plaintiff a residence, furnishings, transportation, health and dental insurance, a yearly stipend for clothing for their two children, a separate $1500.00 monthly payment for child support, and $600.00 monthly in alimony for eighteen (18) months. Plaintiff challenged this separation agreement and the ante-nuptial agreement in the Circuit Court for Prince George's County, Maryland, seeking declaratory relief that these agreements are void on the basis of fraud or duress. On May 5,

2004, that court reviewed the terms of the agreement, Plaintiff's relationship to Defendant, and Plaintiff's capacity to understand the agreements when she signed them, and found that both were valid agreements and are not void by virtue of undue influence, duress or unfair terms. ECF No. 29-5 at 9 (Tr. Hr'g *Davis v. Toure-Davis*, Case No. CAD03-26685). That court entered its order on May 28, 2004. ECF No. 29-6. On June 11, 2004 the parties reached a new agreement with respect to the issues of custody, child support, property matters, and alimony. Defendant agreed to pay $2000.00 per month in child support and $600.00 per month in alimony for thirty-three (33) months. ECF No. 29-7 at 2-3.

On June 19, 2013 Plaintiff filed an amended complaint in this court. ECF No. 16. Plaintiff alleges that since June 2001 Defendant has not provided Plaintiff financial support to maintain Plaintiff at an annual income that is not less than 125 percent of the Federal Poverty Guidelines as required by Section 1183a(a)(1)(A) of Title 8 of the United States Code, an obligation he agreed to when he executed the Form I-864 in October 1999. ECF No. 16 ¶ 18. Plaintiff seeks judgment in the amount of $131,864.00. *Id.* ¶ 21(1). Plaintiff moved for partial summary judgment on the issue of Defendant's liability (ECF No. 24), which Defendant opposed (ECF No. 29) and Plaintiff supported by filing a supplemental authority (ECF No. 34). Defendant filed a cross-motion for summary judgment (ECF No. 28), which Plaintiff opposed (ECF No. 30) and Defendant supported by filing a reply (ECF No. 33).[3] Approximately three months later Defendant filed a second cross-motion for summary judgment (ECF No. 38),

---

[3] The court noted Defendant's summary judgment motion violated Local Rule 105.2(c), which requires, in a two-party case where both parties intend to file summary judgment motions, counsel are to agree among themselves which party is to file the initial motion. After that motion has been filed, the other party shall file a cross-motion accompanied by a single memorandum (both opposing the first party's motion and in support of its own cross-motion). Defendant failed to follow this rule, but the court did not require any corrective action to be taken. *See* ECF No. 31.

3

Plaintiff filed a response (ECF No. 39) and Defendant filed a *corrected* second cross-motion for summary judgment (ECF No. 40).

## JURISDICTION AND VENUE

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claim involves a federal statute. *See* 8 U.S.C. § 1183a(e)(1) ("An action to enforce an affidavit of support executed under subsection (a) of this section may be brought against the sponsor in any appropriate court—by a sponsored alien, with respect to financial support [.]"). Venue is proper in this judicial district since Defendant resides in this judicial district. 28 U.S.C. § 1391(b)(1).

## STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing no genuine issue as to any material fact exists. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir.

1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.

On those issues where the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *Anderson*, 477 U.S. at 256.  However, "'[a] mere scintilla of evidence is not enough to create a fact issue.'"  *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959 (1968)).  There must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

When faced with cross-motions for summary judgment, the court must consider "each motion separately on its own merits to determine whether either of the parties deserve judgment as a matter of law."  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted).  The court applies the same standards of review.  *Monumental Paving & Excavating, Inc. v. Penn. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) (citing *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment – – even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied*, 469 U.S. 1215 (1985)).

**DISCUSSION**

Plaintiff alleges Defendant has violated and is presently violating his obligation to adequately support her financially, per the obligation Defendant agreed to when he signed the Form I-864. Plaintiff argues, even assuming the ante-nuptial agreement remains valid despite the entry of the divorce decree, the Form I-864 remains a valid and executable contract between Plaintiff and Defendant.

Any alien seeking admission to the United States will not be admitted if in the opinion of the Attorney General the alien is "likely at any time to become a public charge[.]" 8 U.S.C. § 1182(a)(4)(A). Implementation of this provision is accomplished by requiring an individual who sponsors the alien's admission to execute an affidavit of support. *Id.* § 1182(a)(4)(C)(ii). That affidavit is a contract in which "the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable[.]" *Id.* § 1183a(a)(1)(A). The contract is legally enforceable against the sponsor by the sponsored alien (or by the Federal Government, any State, local or any other entity providing any means-tested public benefit) and, pursuant to the contract, the sponsor agrees to submit to the jurisdiction of any Federal or State court for the purposes of enforcement of the contract. *Id.* § 1183a(a)(1)(B)-(C).

The product of these legal mandates is the Form I-864. The form advises a sponsor that if he or she signs a Form I-864 as part of an immigrant's application package, "under 213A of the Immigration and Nationality Act these actions create a contract between you and the U.S. Government. The intending immigrant's becoming a permanent resident is the 'consideration' for the contract." Form I-864, page 7, http://www.uscis.gov/files/form/i-864.pdf (last visited

Mar. 24, 2014).[4] The form further cautions a sponsor that should the immigrant become an LPR, then the sponsor must "[p]rovide the intending immigrant any support necessary to maintain him or her at an income that is at least 125 percent of the Federal Poverty Guidelines for his or her household size. . . ." *Id.* If the immigrant becomes an LPR, the sponsor's income and assets may be considered to be available to the immigrant in determining whether he or she is eligible for certain means-tested public benefits. *Id.* A sponsor is warned of consequences under the heading "What If I Do Not Fulfill My Obligations?"

> If you do not provide sufficient support to the person who becomes a permanent resident based on the Form I-864 that you signed, that person may sue you for this support.
>
> If a Federal, State or local agency, or a private agency provides any covered means-tested public benefit to the person who becomes a permanent resident based on the Form I-864 that you signed, the agency may ask you to reimburse them for the amount of the benefits they provided. If you do not make the reimbursement, the agency may sue you for the amount that the agency believes you owe.
>
> If you are sued, and the court enters a judgment against you, the person or agency that sued you may use any legally permitted procedures for enforcing or collecting the judgment. You may also be required to pay the costs of collection, including attorney fees.

*Id.* at 7-8. The federal regulations provide that "[e]xecution of an affidavit of support . . . creates a contract between the sponsor and the U.S. Government for the benefit of the sponsored immigrant, and of any Federal, State, or local government agency or private entity that administers any means-tested public benefits program." 8 C.F.R. § 213a.2(d) (2013). The law lists five circumstances whereby the sponsor's financial obligation terminates: (1) the sponsored immigrant becomes a citizen of the United States; (2) the sponsored immigrant has obtained forty (40) quarters of coverage under Title II of the Social Security Act; (3) the sponsored

---

[4] As indicated on the form, the most recent update to Form I-864 occurred on March 22, 2013.

immigrant ceases to hold LPR status and departs the United States; (4) the sponsored immigrant becomes subject to removal but applies for and obtains a new grant of adjustment of status; or (5) the sponsored immigrant dies.  *Id.* § 213a.2(e)(2)(i)(A)-(E).  The Form I-864 presently makes explicit that "divorce **does not** terminate your obligations under this Form I-864."  Form I-864 at 8.  In 1999, this fact was merely implicit.  *Liu v. Mund*, 686 F.3d 418, 423 (7th Cir. 2012).

      A.     *Waiver*

Both parties agree that Defendant signed an affidavit in support of Plaintiff.  Defendant's principal argument is that Plaintiff waived her right to enforce the Form I-864 when she signed the ante-nuptial agreement with its clause that each party foregoes any claim of alimony of support (except child support).  ECF No. 29 at 8-9.  Defendant relies on *Blain v. Herrell*, a 2010 case from the United States District Court for the District of Hawaii.  No. 10-72 ACK-KSC, 2010 WL 2900432 (D. Haw. July 21, 2010).  In *Blain* the parties entered into an ante-nuptial agreement whereby they agreed they would not seek support in any form from the other in the event of a separation or the termination of the marriage.  Following the execution of that agreement and their entry into marriage, Ms. Herrell signed a Form I-864 in support of her husband, Mr. Blain.  The marriage fell on hard times and the couple separated.  Blain sued in federal court seeking support from Herrell pursuant to the Form I-864.  The district court in Hawaii found the ante-nuptial agreement waived Blain's legal right to any support from Herrell, which the state court found was a valid legal document, binding the parties.  The court noted that it was not addressing the right of any public agency to enforce the Form I-864 against Herrell should such agency provide any covered means-tested public benefit to Blain.  *Id.* at *7-8.

Turning to the instant case, Defendant acknowledges the Form I-864 remains in force but contends Plaintiff waived her ability to seek support from Defendant in the ante-nuptial

8

agreement, support that includes enforcement of the Form I-864.  Defendant concedes however that a public agency may seek reimbursement from him for any means-tested benefits provided to Plaintiff.  ECF No. 33 at 14.

*Blain* is initially attractive, but ultimately unpersuasive for numerous reasons.  First, it must be noted that it is an unpublished district court case from outside this district, so any force it has is solely persuasive.  Second, the discussion about the effects of the ante-nuptial agreement is pure *dicta*, as the district court's opinion granted Blain's motion to withdraw his complaint.  The court continued to discuss the ante-nuptial agreement only "[f]or completeness of the record[.]" *Blain*, 2010 WL 2900432, at *7.  Third, beyond its circumstances, the reasoning itself is not persuasive.  There is a waiver in this litigation, but it is Defendant, and not Plaintiff, who has waived his rights.  Because Defendant signed the ante-nuptial agreement *before* he signed the Form I-864, the sequence of Defendant's actions leads to the conclusion that the Form I-864 waived that portion of the ante-nuptial agreement concerning spousal support.  It is a "well settled rule that the parties by their conduct may waive the requirements of a written contract." *Universal Nat'l Bank v. Wolfe*, 279 Md. 512, 522, 369 A.2d 570, 576 (1977); *see also Hovnanian Land Inv. Group, LLC v. Annapolis Towne Centre at Parole, LLC*, 421 Md. 94, 120, 25 A.3d 967, 982 (2011) ("[O]ur caselaw shows a persistent unwillingness to give dispositive and preclusive effect to contractual limitations on future changes to that contract.").

Defendant waived or modified his contractual right to preclude Plaintiff from seeking support in at least two ways.  First, by signing the Form I-864, he promised the U.S. Government, in consideration of Plaintiff's application to become a legal permanent resident, he would support Plaintiff until a terminating event occurred.  By signing that contract, he granted Plaintiff, as a third-party beneficiary to the contract, a right to bring suit in any federal or state

court to enforce the contract. 8 U.S.C. § 1183a(a)(1)(B)-(C); *Younis v. Farooqi*, 597 F. Supp. 2d 552, 554 (D. Md. 2009) (Form I-864 "is considered a legally enforceable contract between the sponsor and the sponsored immigrant."). Such an act constitutes a waiver of Paragraph 9 of the ante-nuptial agreement. *See La Belle Epoque, LLC v. Old Europe Antique Manor, LLC*, 406 Md. 194, 213, 958 A.2d 268, 280 (2008) ("A party waives a contractual right by intentionally relinquishing the right or engaging in conduct that warrants the inference that the right has been relinquished.").

Further, Defendant's action in connection with the separation agreement and divorce agreement, namely his assent in both agreements to pay alimony and support to Plaintiff, indicates that the ante-nuptial's prohibition of either side demanding support or alimony has been waived.[5] Defendant's argument that the ante-nuptial agreement demonstrates Plaintiff's waiver of her right of enforcement is unavailing.

### B. Estoppel

Beyond his waiver argument, Defendant contends Plaintiff is equitably estopped from bringing this action. "The basis of equitable estoppel is the effect of the conduct of one party on the position of the other party." *Creveling v. Gov't Emps. Ins. Co.*, 376 Md. 72, 101, 828 A.2d 229, 246 (2003). A party is estopped from "asserting rights which might perhaps have otherwise existed . . . against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires some corresponding right, either of property, of contract, or of remedy." *Id.* at 101-02, 828 A.2d at

---

[5] The United States Department of Homeland Security, in responding to comments submitted as part of the rulemaking process, wrote that "[i]f the sponsored immigrant is an adult, he or she probably can, in a divorce settlement, surrender his or her right to sue the sponsor to enforce an affidavit of support." ECF No. 34-1 at 9 (71 Fed. Reg. 35740 (June 21, 2006)). As an initial matter, such commentary, even if by the executive agency responsible for implementing the law, does not constitute law. Furthermore, this hypothetical does not represent the facts in this litigation, where the waiver of support occurred *before* Defendant agreed to support Plaintiff via the Form I-864. Defendant produced no document where Plaintiff waived her right to sue for support promised in the Form I-864 *after* Defendant signed that form.

246 (citing *Cunninghame v. Cunninghame*, 364 Md. 266, 289, 777 A.2d 1188, 1201 (2001) (quoting *Knill v. Knill*, 306 Md. 527, 510 A.2d 546 (1986)). Defendant bears the burden of proving the facts that create the benefit of estoppel. *Id.* at 102, 828 A.2d at 247.

Defendant makes no such demonstration in his opposition to Plaintiff's motion for partial summary judgment. Defendant's submission on this point consists solely of block quotes from the ante-nuptial agreement: Plaintiff's promise that she fully and completely disclosed the nature and extent of her assets and income sources; that she is economically independent of the Defendant; Plaintiff's and Defendant's respective schedules of non-marital property; a clause that provides that such non-marital property is to remain the property of its respective owners; and that the parties will not seek support from the other should they separate. ECF No. 29 at 9-11. Then, the brief abruptly stops and goes into a discussion of *Blain*. Defendant makes no argument whatsoever connecting these portions of the ante-nuptial agreement with his contention that Plaintiff is equitably estopped from seeking support pursuant to the Form I-864. If Defendant feels Plaintiff has performed a "bait and switch" by initially representing that she was economically independent only to actually be destitute, he provides no such evidence.

However, in his corrected second cross-motion for summary judgment, Defendant contends Plaintiff materially misrepresented fact, namely, Schedule B of the ante-nuptial agreement listing property owned by Plaintiff prior to the marriage. This new allegation is based on Plaintiff's objection to interrogatory number 16 (seeking detailed information about the property listed in Schedule B including the current value) as irrelevant. Defendant contends Plaintiff's refusal to answer is indicative of misrepresentation by her when the ante-nuptial agreement was signed on July 29, 1998. Defendant asserts this misrepresentation is relevant because Plaintiff voluntarily offered Schedule B "to support her material representation of being

11

financially secure and not dependent on the Defendant for support and maintenance which aided in influencing the Defendant to marry her and subsequently signing an I-864 Affidavit of Support with the Federal Government. Whether the assertion of financial and economic independence is true is relevant not only to the character of the Plaintiff but holds some legal significance to what action should be taken by the court in proceeding in this matter." ECF No. 40 at 9. In essence, Defendant is arguing he was fraudulently induced to marry by Plaintiff's misrepresentation that she was financially secure and independent.

With his corrected second cross-motion for summary judgment, Defendant is *now* challenging the legitimacy of the ante-nuptial agreement. At the May 5, 2004 hearing on Mrs. Toure-Davis's motion for declaratory relief, Judge Lombardi found,

> One of the reasons that – – and it may have been the principal reason why Mr. Davis wanted an antenuptial agreement was to take care of his four children by another marriage. He wanted them to have his house and he told that to Mrs. Toure-Davis and she understood that. She actually had a house of her own that was given to her by her aunt, and she asked Mr. Davis to waive any right that he might have in that particular property.
>
> It is true that the amount of these properties was not shown, but it's clear to the Court that Mrs. Toure-Davis had a very good idea of what Mr. Davis owned, both while he was in Africa with her and later, of course, after she came here and married him and did all the books and finances for him. Now, although that latter knowledge came after the antenuptial agreement, that is more relevant to the separation agreement than to the former. Nevertheless the Court finds *both parties knew enough that neither was pulling any wool over anybody's eyes in terms of the antenuptial agreement*.

ECF No. 28-3 at 7-8 (Tr. Hr'g *Davis v. Toure-Davis*, Case No. CAD03-26685, May 5, 2004) (emphasis added). Defendant should have raised this issue before the Circuit Court for Prince George's County, Maryland. In the Order of May 28, 2004, Judge Lombardi declared the ante-

nuptial agreement entered into by the parties on July 29, 1998 a valid contract between the parties. *See* ECF No. 28-4. This court declines to overturn that finding.

Defendant also contends "that there are triable issues of fact with regards to the Doctrine(s) of Unclean Hands, Collateral Estoppel in the form of a prior State Court Decision which adjudicated the legality of two private agreements entered into by the Plaintiff and the Defendant." ECF No. 29 at 8 (footnote omitted). Defendant provides no evidence for his unclean hands argument and it will not be considered further. In terms of the collateral estoppel argument, Defendant appears to be referring to the fact that Plaintiff previously sought a declaratory judgment in state court that the ante-nuptial agreement and/or the separation agreement were void. The Circuit Court for Prince George's County, Maryland refused to make such a finding, instead concluding that neither the ante-nuptial agreement nor the separation agreement was inequitable by their terms; there was no confidential relationship between the parties; and Plaintiff did not demonstrate that there was any duress or undue influence in obtaining either agreement. ECF No. 29-5 (Tr. Hr'g *Davis v. Toure-Davis*, Case No. CAD03-26685, May 5, 2004). That court declared both the ante-nuptial agreement and the separation agreement to be valid contracts between Plaintiff and Defendant. ECF No. 29-6. Once again, this court declines to overturn these findings.

    *C.    Obligation under Form I-864*

Returning to the basis of Plaintiff's claim of support in this litigation, the Form I-864 is a contract between the sponsor (in this case, Defendant) and the U.S. Government. 8 C.F.R. § 213a.2(d). This obligation of support, imposed by federal law, is separate and apart from any obligation of support imposed under Maryland law or right to support waived by the parties via an ante-nuptial agreement. The duty of support imposed on a sponsor by the Form I-864 is "for

the benefit of federal and state taxpayers and of the donors to organizations that provide charity for the poor." *Liu*, 686 F.3d at 422. In consideration for allowing Defendant's immigrant wife to seek an adjustment of her status to a legal permanent resident, Defendant pledged to the U.S. Government, as the sponsor, that he will ensure his sponsored immigrant wife is provided for to maintain her income, at a minimum, of 125 percent of the Federal Poverty Guidelines. Defendant voluntarily, knowingly and willingly signed the Form I-864. Defendant therefore cannot absolve himself of his contractual obligation with the U.S. Government by Plaintiff purportedly waiving any right to alimony or support via the ante-nuptial agreement. *See Erler v. Erler*, No. CV-12-2793-CRB, 2013 WL 6139721, at *2 (N.D. Cal. 2013). "Because Defendant's obligation under the [Form I-864] is to the Government, Plaintiff's right to support under the [Form I-864] persists regardless of the terms of the divorce judgment." *Id.* at *3. This court also finds persuasive the analysis from the district court in New Jersey.

> [T]his Court finds that it would undermine the purpose of the statute to allow sponsors to present an I-864 to immigration authorities that can never be enforced by the sponsored alien due to a prenuptial agreement that is not disclosed to immigration authorities. Congress determined that for an I[-]864 to be valid at all, the sponsored alien must be able to enforce it at the time when it is submitted to the United States. For this reason, the court rejects the suggestion by Defendant that Plaintiff never had the right to enforce the I-864 on the basis of a prior prenuptial agreement.

*Shah v. Shah*, Civil No. 12-4648 (RBK/KMW), 2014 WL 185914, at *4 (D.N.J. Jan. 14, 2014).

The issue of Defendant's obligation to support Plaintiff as promised via the Form I-864 was apparently raised by Mrs. Toure-Davis as part of her motion for declaratory relief in the Circuit Court for Prince George's County, Maryland. At one point during the hearing Judge Lombardi remarked, "[s]he has presented an affidavit to INS in which he has said under oath that he will [take care of her]." ECF No. 28-3 at 7 (Tr. Hr'g *Davis v. Toure-Davis*, Case No.

CAD03-26685, May 5, 2004). No other references to this obligation of support are made. In Order of May 28, 2004 issued by Judge Lombardi, the affidavit of support or the Form I-864 is not mentioned. No final judgment was made and entered on the merits regarding Defendant's obligation of support pursuant to the Form I-864 by the Circuit Court for Prince George's County, Maryland.

### D. *Removal Proceeding & Plaintiff's Status*

Finally, it is undisputed Plaintiff lived in her homeland of Cote D'Ivoire for an extended period of more than a year from the summer of 2009 until on or about December 14, 2010. *See* ECF No. 24 at 2. She and the children departed Cote D'Ivoire due to the political climate and unrest in the country. Removal proceedings were subsequently initiated by the U.S. Citizenship and Immigration Services against Plaintiff. By order of an immigration judge on February 13, 2012, Plaintiff was readmitted as a LPR and the removal proceedings were terminated. ECF No. 24-2. According to Plaintiff, her status as a legal permanent resident was never interrupted. *See* ECF No. 24 at 2. Defendant argues this court is not bound by the ruling of the immigration judge and invites this court to consider the facts and circumstances of Plaintiff's departure from the United States.

> [T]he Defendant contends that as a fact finder, this Court is free to make its own findings of fact. It is neither limited to [n]or bound by the facts found by the Immigration Judge. In addition, Defendant contends that the issues are substantially different than the instant matter.
>
> The issue before the Immigration Court, was whether or not the plaintiff could lawfully re-enter the United States after being outside the United States for more than one year. We agree that decision is solely the exclusive jurisdiction of the Immigration Court and not subject to review by this Court. It is not inconsistent that two different courts and/or judges might reach a different conclusion from the same set of facts. The Defendant in this case was not a party to the hearing before the Immigration Court and it

15

> would be a violation of due process to subject him to a decision of court without an opportunity to be heard. As a fact finder, this Court is free to hear any relevant evidence to decide the issue(s) before it, and not be bound by the findings of fact[] of an administrative judge. This Court is free to make its own findings of fact.

ECF No. 29 at 6-7. This court declines Defendant's invitation.

Pursuant to 8 U.S.C. § 1229a(a)(1) "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien." Section 1229a(a)(3) states in pertinent part, "a proceeding under this section *shall be the sole and exclusive procedure* for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." Emphasis added. It appears to this court that the termination of removal proceedings against Plaintiff was in accordance with 8 U.S.C. § 1229b(a).

> The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—
>
> (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
>
> (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
>
> (3) has not been convicted of any aggravated felony.

Defendant argues, since he was not a party to the removal proceeding before the immigration judge, it would be a violation of due process "to subject him to a decision of court without an opportunity to be heard." ECF No. 29 at 7. Defendant was not a party to the removal proceeding because the U.S. Government initiated the proceeding against his ex-wife, a legal permanent resident, who had been outside of the United States for more than one year. Removal hearings are open to the public. *See* 8 C.F.R. § 1240.10(b) ("*Public access to hearings. Removal hearings shall be open to the public, except that the immigration judge may, in his or

her discretion, close proceedings as provided in §1003.27[6] of this chapter."). Nothing on the face of the February 13, 2012 Order of the Immigration Judge indicates the removal hearing was closed. The apparent lack of notice to Defendant, a non-party, about Plaintiff's removal proceeding does not constitute a violation of due process. Defendant has not otherwise specified the purported "due process violation" and the court finds no such violation.

Plaintiff's continued residency in the United States was in jeopardy and she was afforded the opportunity to be heard at the removal hearing in accordance with due process. This court appreciates, when the immigration judge readmitted Plaintiff as a legal permanent resident on February 13, 2012, Defendant's obligation as her sponsor to maintain her at an income that is at least 125 percent of the Federal Poverty Guidelines resumed.[7] However this detrimental financial consequence of the immigration judge's ruling does not give Defendant standing in this court to challenge the validity of the immigration judge's decision. The court therefore declines to re-evaluate the facts and circumstances considered by the immigration judge in Plaintiff's removal proceeding.

---

[6] All hearings, other than exclusion hearings, shall be open to the public except that:
(a) Depending upon physical facilities, the Immigration Judge may place reasonable limitations upon the number in attendance at any one time with priority being given to the press over the general public;
(b) For the purpose of protecting witnesses, parties, or the public interest, the Immigration Judge may limit attendance or hold a closed hearing.
(c) In any proceeding before an Immigration Judge concerning an abused alien spouse, the hearing and the Record of Proceeding shall be closed to the public unless the abused spouse agrees that the hearing and the Record of Proceeding shall be open to the public. In any proceeding before an Immigration Judge concerning an abused alien child, the hearing and the Record of Proceeding shall be closed to the public.
(d) Proceedings before an Immigration Judge shall be closed to the public if information subject to a protective order under §1003.46, which has been filed under seal pursuant to §1003.31(d), may be considered.

8 C.F.R. § 1003.27 (2013).

[7] As Plaintiff notes in her motion for partial summary judgment, "[she] was re-admitted into the United States and on February 13, 2012, the Immigration Court in Baltimore, Maryland, confirmed her status as a legal permanent resident. *Her status as a legal permanent resident was never interrupted*." ECF No. 24 at 2 (emphasis added).

17

E. *Remedy*

Although this court has determined Defendant is legally obligated under the Form I-864 to maintain Plaintiff's income at a minimum of 125 percent of the Federal Poverty Guidelines, this memorandum opinion does not address whether Defendant has breached that obligation since the couple's separation in June of 2001.[8] In order to determine whether Defendant has breached *or* satisfied his obligation, Plaintiff must submit an affidavit with supporting documentation evidencing, on a yearly basis, any income or benefits she received from sources *other than Defendant* since June of 2001.[9] She has the burden of demonstrating the exact amount of support owed. Plaintiff should also submit an itemization of legal costs she incurred to enforce the Form I-864 (affidavit of support).

In reviewing Defendant's motions and opposition, it is apparent Defendant financially supported Plaintiff for a period of time since their separation in June of 2001. Defendant must submit an affidavit with supporting documentation evidencing, on a yearly basis, the amount of financial support he provided to Plaintiff since their separation in June of 2001. It is not readily apparent to the court whether Defendant provided financial support during Plaintiff's absence from the United States between the summer of 2009 and December 14, 2010. The parties should discuss whether Plaintiff is *or* is not entitled to financial support during this period.

---

[8] In her Amended Complaint Plaintiff alleges "[s]ince June of 2001, the date of Mr. Davis and Ms. Toure-Davis' separation, Mr. Davis has not provided support to Ms. Toure-Davis at 125 percent of poverty level." ECF No. 16 ¶ 3.

[9] The parties executed a separation agreement dated March 29, 2001, which the Circuit Court for Prince George's County, Maryland found to be a valid contract in an Order of May 28, 2004. It is not clear to this court why Plaintiff claims June of 2001 as the date when Defendant failed to financially support her in accordance with the Form I-864. According to the separation agreement Plaintiff agreed to move from the marital residence to an alternative residence not later than June 1, 2001. However, also pursuant to this separation agreement, Defendant agreed to give Plaintiff $600.00 per month for eighteen (18) months as alimony. In her motion for partial summary judgment as to damages, Plaintiff must explain why this date is the alleged commencement date of non-support.

Plaintiff's motion for partial summary judgment as to damages is due on or before *May 21, 2014*. Defendant's cross-motion for partial summary judgment as to damages and opposition to Plaintiff's motion are due on or before *June 11, 2014*. Plaintiff's opposition to Defendant's cross-motion and reply to her motion are due on or before *July 2, 2014*. Defendant's reply is due on or before *July 23, 2014*.

**CONCLUSION**

For the foregoing reasons, the court finds there are no genuine issues as to any material fact and Plaintiff is entitled to judgment (liability only) as a matter of law. Fed. R. Civ. P. 56(a). An Order will be entered separately.

| | |
|---|---|
|   March 28, 2014   |                  /s/                   |
| Date | WILLIAM CONNELLY |
| | UNITED STATES MAGISTRATE JUDGE |