## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NATHALIE TOURE-DAVIS     ) | |
|               ) | |
|    Plaintiff,    ) | |
|               ) | |
|    v.    ) | Civil Action No. WGC-13-916 |
|               ) | |
| CHARLES G. DAVIS      ) | |
|               ) | |
|    Defendant.    ) | |

### MEMORANDUM OPINION

Plaintiff Nathalie Toure-Davis, a legal permanent resident of the United States, initiated this lawsuit against her former husband, Defendant Charles G. Davis, a United States citizen, seeking to enforce Defendant's obligation to support her in accordance with an affidavit of support he signed after the couple married.  The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment. *See* ECF No. 35 ¶ 7[1].  In the Memorandum Opinion of March 28, 2014, the undersigned found Defendant is obligated to support his immigrant ex-spouse to maintain her income at a minimum of 125 percent of the Federal poverty line.  Defendant knowingly, voluntarily and willingly assumed this obligation when he signed Form I-864, *Affidavit of Support Under Section 213A of the Act*, on October 28, 1999.  *See* ECF No. 44-1 at 6.  The memorandum opinion however did not address whether Defendant has breached that obligation since the couple's separation in June of 2001.

> In order to determine whether Defendant has breached *or* satisfied his obligation, Plaintiff must submit an affidavit with supporting documentation evidencing, on a yearly basis, any income or

---

[1] This case was referred to the undersigned on October 31, 2013. *See* ECF No. 37.

> benefits she received from sources *other than Defendant* since June of 2001. She has the burden of demonstrating the exact amount of support owed. Plaintiff should also submit an itemization of legal costs she incurred to enforce the Form I-864 (affidavit of support).

ECF No. 42 at 18 (footnote omitted).

Because the record before the court demonstrated some level of financial support of Plaintiff by Defendant, the undersigned directed Defendant to submit an affidavit with supporting documentation evidencing, on a yearly basis, the amount of financial support he provided to Plaintiff since their separation in June of 2001. *Id.* The undersigned directed the parties to file cross-motions discussing what damages, if any, Plaintiff is entitled to receive. Pending before the court and ready for resolution are Plaintiff's motion for partial summary judgment on the issue of damages (ECF No. 44) and Defendant's cross-motion for partial summary judgment (ECF No. 45). No hearing is deemed necessary and the court now rules pursuant to Local Rule 105.6 (D. Md. 2014).

## BACKGROUND

The parties are referred to the March 28, 2014 Memorandum Opinion for the factual background. *See* ECF No. 42 at 1-4.

## STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam*

*Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing no genuine issue as to any material fact exists. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

On those issues where the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256. However, "'[a] mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959 (1968)). There must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

When faced with cross-motions for summary judgment, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation

marks omitted).   The court applies the same standard of review.   *Monumental Paving &*
*Excavating, Inc. v. Penn. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) (citing *ITCO*
*Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to
resolve genuine issues of material fact on a motion for summary judgment – – even where . . .
both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied*,
469 U.S. 1215 (1985)).

## DISCUSSION

A.    *Determining the Appropriate Household Size*

It is undisputed that Plaintiff and Defendant executed a separation agreement dated
March 29, 2001 but Plaintiff did not move out of the marital home until on or about June 1,
2001.  *See* ECF No. 29 at 2.  Upon separation, the couple's minor children resided with Plaintiff.
It is further undisputed that between on or about July 1, 2009[2] until on or about December 14,
2010, Plaintiff and the couple's minor children, who are U.S. citizens, resided outside of the
United States in Plaintiff's native country, Cote D'Ivoire.  As of December 15, 2010, upon the
return of Plaintiff and the minor children to the United States due to political unrest in Cote
D'Ivoire, the couple's minor children have resided with Defendant.

Plaintiff concedes Defendant provided at least 125 percent of the Federal poverty line
during the years of 2001 (as of June 1, 2001), 2002 and 2011.  *See* ECF No. 44 at 3, 7.  From
2003 to the present (excluding 2011) Plaintiff claims Defendant failed to support her financially,
resulting in her income falling below 125 percent of the Federal poverty line.  *Id.* at 4, 7.

---

[2] "Mr. Davis continued to pay the mortgage even after the Plaintiff abandoned the property on or about June 30,
2009." ECF No. 29 at 3.  *See* ECF No. 29-10 at 3 ("Dr. Allegra has learned that Ms. Toure-Davis is leaving with the
children on a planned trip to France on June 30, 2009. . . .").  Plaintiff Toure-Davis notes an Immigration Judge
found she had not permanently departed the United States between the summer of 2009 to December 14, 2010.  ECF
No. 44 at 6.

Plaintiff seeks damages, based on a household size of three, from 2003 to 2010, and damages, based on a household size of one, from 2012 to 2014.

Defendant does not challenge Plaintiff's assertion of a household size of one for the years 2012 to 2014.   However, for the years 2003 to 2010, Defendant claims Plaintiff should be considered a household of one.   Alternatively, if the court determines the household size was three for the years 2003 to 2010, Defendant argues his child support payments and other payments exclusively for the benefit of the children should be credited against his obligation of support.

The statute mentions "family unit" and "household" in relation to a sponsor's eligibility to sponsor an immigrant.

> For purposes of [the requirements for sponsor's affidavit of support], a reference to an annual income equal to at least a particular percentage of the Federal poverty line means an annual income equal to at least such percentage of the Federal poverty line for a family unit of a size equal the number of members of the sponsor's household (including family and non-family dependents) plus the total number of other dependents and aliens sponsored by that sponsor.

8 U.S.C. § 1183a(f)(6)(A)(iii).   As outlined by the implementing regulation, in calculating household size, the sponsor, the sponsor's spouse and all of the sponsor's children who have not reached the age of majority are counted.   *See* 8 C.F.R. § 213a.1.   The sponsor is required to demonstrate, in light of his household size, he has the financial means to support the immigrant he is sponsoring at a minimum of 125 percent of the Federal poverty line.   The statute and implementing regulation list conditions whereby a sponsor's obligation of support ceases.   *See* 8 U.S.C. §§ 1183, 1183a(3); 8 C.F.R. § 213a.2(e).   A divorce between a sponsor and a sponsored immigrant is not recognized as a terminating condition.   Neither Congress nor the Department of Homeland Security, Citizen and Immigration Services has defined "household size" for purposes

of enforcing an affidavit of support upon the divorce of a sponsor and a sponsored immigrant. *Erler v. Erler*, No. CV-12-2793-CRB, 2013 WL 6139721, at *5 (N.D. Cal. Nov. 21, 2013).  In the absence of any guidance, this court turns to the statute for a resolution of this issue.

In exchange for allowing a U.S. citizen to sponsor an immigrant who does not meet other admission requirements, Congress requires the sponsor to ensure the sponsored immigrant does not become a public charge.  The sponsor pledges his acceptance via the affidavit of support. "[S]uch affidavit is executed by a sponsor of the alien as a contract—(A) in which the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable[.]"  8 U.S.C. § 1183a(a)(1)(A).  The household size is relevant *at the time of the application* because the sponsor must demonstrate his ability to support the number of immigrants being sponsored via the affidavit, in this case Nathalie Toure-Davis on October 28, 1999, in light of the number of individuals then residing in the sponsor's household, in this case a total of three.  *See* ECF No. 44-1 at 2, 6 (Form I-864 executed by Charles G. Davis on October 28, 1999).  The affidavit of support does not mandate the sponsor support other non-immigrant members of the household at 125 percent of the Federal poverty line.  The contractual obligation which Nathalie Toure-Davis (sponsored immigrant) may enforce against the sponsor (Charles G. Davis) concerns the support Charles G. Davis is required to provide Nathalie Toure-Davis in accordance with Form I-864, Affidavit of Support.  In light of the Congressional purpose of imposing the contractual obligation embodied by Form I-864, this court finds, in the post-divorce circumstances of this case, the appropriate household size is one, not three, for determining whether Defendant Charles G. Davis met his obligation.

The minor children are U.S. citizens; they are not sponsored immigrant children. The obligation of support imposed by Form I-864 is not legally enforceable by the minor children against their father Charles G. Davis. The issue of child support is a matter of interest to the State of Maryland. Defendant Charles G. Davis began paying child support in June 2001, when the parties separated, and continued to pay child support as ordered in June 2004 by the Circuit Court for Prince George's County, Maryland. Defendant Davis also provides other financial support specifically for the benefit of the minor children. If Defendant Davis failed to pay child support, the appropriate forum to seek enforcement is the Circuit Court for Prince George's County.

B.      *Determining the Federal Poverty Line*

> For purposes of [the requirements for sponsor's affidavit of support], the term "Federal poverty line" means the level of income equal to the official poverty line (as defined by the Director of the Office of Management and Budget, as revised annually by the Secretary of Health and Human Services, in accordance with section 9902(2) of Title 42) that is applicable to a family of the size involved.

8 U.S.C. § 1183a(h).

The Department of Health and Human Services ("HHS") issues annual poverty guidelines for the 48 Contiguous States and the District of Columbia, for Alaska, and for Hawaii. The guidelines for the 48 Contiguous States and the District of Columbia apply to this litigation. During the years 2003 to 2010 and 2012 to 2013[3] the HHS Poverty Guidelines for a household size of one are as follows:

---

[3] Plaintiff seeks damages for the year 2014. If the court awarded damages, it would be on a pro-rata basis, up to May 20, 2014. Although Plaintiff states she has a part-time job, Plaintiff did not identify any income or benefits received or earned for 2014. The court shall defer any possible award of damages for 2014. Plaintiff must supplement the record with regard to all income and benefits received in 2014. Defendant may submit any documents reflecting financial support he provided Plaintiff in 2014.

| Year | HHS Poverty Guideline | 125% of HHS Poverty Guideline |
|---|---|---|
| 2003 | $8,980[4] | $11,225.00[5] |
| 2004 | $9,310[6] | $11,637.50 |
| 2005 | $9,570[7] | $11,962.50 |
| 2006 | $9,800[8] | $12,250.00 |
| 2007 | $10,210[9] | $12,762.50 |
| 2008 | $10,400[10] | $13,000.00 |
| 2009 | $10,830[11] | $13,537.50 |
| 2010 | $10,830[12] | $13,537.50 |
| 2012 | $11,170[13] | $13,962.50 |
| 2013 | $11,490[14] | $14,362.50 |

The far right column reflects the minimum amount of support Plaintiff should have received each year to meet the income threshold of 125 percent of the Federal poverty line.

Plaintiff Toure-Davis seeks financial support for a period beginning more than 10 years ago. By statute, she is entitled to pursue this cause of action during the period of enforceability. "An affidavit of support shall be enforceable with respect to benefits provided for an alien before the date the alien is naturalized as a citizen of the United States, or, if earlier, the termination date provided under paragraph (3) [the immigrant has worked 40 qualifying quarters of coverage as defined by title II of the Social Security Act]." 8 U.S.C. § 1183a(a)(2). Because Plaintiff Toure-Davis is not a naturalized citizen as of the date she filed her motion for partial summary judgment on the issues of damages nor has she worked 40 qualifying quarters of coverage, the

---

[4] Annual Update of the HHS Poverty Guidelines, 68 Fed. Reg. 6546, 6457 (Feb. 7, 2003).
[5] $8,980 x 1.25 = $11,225.
[6] Annual Update of the HHS Poverty Guidelines, 69 Fed. Reg. 7336 (Feb. 13, 2004).
[7] Annual Update of the HHS Poverty Guidelines, 70 Fed. Reg. 8373, 8374 (Feb. 18, 2005).
[8] Annual Update of the HHS Poverty Guidelines, 71 Fed. Reg. 3848 (Jan. 24, 2006).
[9] Annual Update of the HHS Poverty Guidelines, 72 Fed. Reg. 3147 (Jan. 24, 2007).
[10] Annual Update of the HHS Poverty Guidelines, 73 Fed. Reg. 3971 (Jan. 23, 2008).
[11] Annual Update of the HHS Poverty Guidelines, 74 Fed. Reg. 4199, 4200 (Jan. 23, 2009).
[12] Delayed Update of the HHS Poverty Guidelines for the Remainder of 2010, 75 Fed. Reg. 45628, 45629 (Aug. 3, 2010). "HHS is issuing this delayed update due to recent legislation that prohibited the Secretary of HHS from publishing 2010 poverty guidelines before May 31, 2010, and required that the 2009 poverty guidelines remain in effect until the Secretary of HHS published updated guidelines." 75 Fed. Reg. 45628.
[13] Annual Update of the HHS Poverty Guidelines, 77 Fed. Reg. 4034, 4035 (Jan. 26, 2012).
[14] Annual Update of the HHS Poverty Guidelines, 78 Fed. Reg. 5182, 5183 (Jan. 24, 2013).

affidavit of support executed by Defendant Charles G. Davis remains enforceable with respect to benefits provided.

C.      *Determining Plaintiff's Income during the Relevant Years*

"To determine the appropriate damages, courts compare the plaintiff's annual income for the particular years at issue, rather than the aggregate income for the entire period, against the 125% poverty threshold for each particular year." *Younis v. Farooqi*, 597 F. Supp. 2d 552, 554 (D. Md. 2009)(citing *Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1024-25 (N.D. Cal. 2008)). Defendant Davis is obligated to ensure Plaintiff Toure-Davis' income does not fall below 125 percent of the Federal poverty line.  Defendant Davis is not required to pay Plaintiff Toure-Davis 125 percent of the Federal poverty line "but only to act as a safety net to ensure that, in any given living situation, her overall income does not fall below that level." *Erler*, 2013 WL 6139721, at *7.  This court must compare Plaintiff Toure-Davis' annual income against the 125 percent of the Federal poverty line for each year to determine whether, if necessary, Defendant Davis provided an appropriate financial safety net.

1.  *Income from Sources Other Than Defendant Davis*

In the Memorandum Opinion of March 28, 2014, the court directed Plaintiff Toure-Davis to "submit an affidavit with supporting documentation evidencing, on a yearly basis, any income or benefits she received from sources *other than Defendant* since June of 2001."  ECF No. 42 at 18.  Excluding her 2013 Form W-2 and 2013 Federal and Maryland Tax Returns, *see* ECF No. 44-2 at 6-10, Plaintiff did not provide any documentation supporting the income or benefits she claims to have received.[15]  As documented in her affidavit, Plaintiff Toure-Davis received the

---

[15] "I do not have supporting documentation evidencing on yearly basis any income or benefits that I received from sources *other than* Defendant since June of 2001, because the majority of my documents were kept at my previous residence that I owned at 7648 Mandan Road in Greenbelt, Maryland.  When my property was sold to the Defendant in January of 2011, less than a month after I was released from Laurel Regional Hospital, I did not remove any of

following income or benefits during the years 2003 to 2010 and 2012 to 2013 from sources other

than Defendant Davis.

| Year | Amount | Source | Purpose |
|------|--------|--------|---------|
| 2003 | $1,500 | Pastor Israel Woods | Pay attorney fees |
| 2004 | $0 | | |
| 2005 | $0 | | |
| 2006 | $0 | | |
| 2007 | $620[16] | Brother, Aunt, Friends | Financial assistance |
| 2008 | No value given | Her church | Groceries, car repairs, utilities |
| 2009 | $5,334 | Mother, Father | Bills; plane tickets |
| 2010 | No value given | Family in Cote D'Ivoire | Rent for apartment |
| 2012 | $950 & No value given (Arthur Horne) | Pastor Albert Appiah; church members; Arthur Horne | Financial assistance; renewal of green card; food & transportation |
| 2013 | $3,347 | Church members; Part-time employment | Financial assistance; earned wages |

In his cross-motion Defendant Davis asserts Plaintiff Toure-Davis failed to include, as

income or benefits received from other sources, the value of residing in the home of Arthur

Horne without paying rent.   In his affidavit Mr. Horne declares $600 is the monthly cost of

Plaintiff Toure-Davis residing in his basement.  ECF No. 44-3 at 1.  Defendant Davis claims the

amount of support he is obligated to provide Plaintiff Toure-Davis should be reduced by $7,200,

as a housing benefit, for 2012 and 2013.

In her reply brief Plaintiff Toure-Davis disputes the alleged $7,200 income in 2012 and

2013.  She contends, rather than income, the amount of $14,400 is a debt she owes Mr. Horne.

ECF No. 46 at 6.  In his reply Defendant Davis asserts the value of the housing ($600/monthly at

---

my documents or other valuable items from the house.  When I asked the Defendant for my documents or other valuable items, I was informed that it had been discarded. From 2011 until the present time, I have not had a place of my own and the assistance that I have received have all been in the form of cash."  ECF No. 44-2 at 2 (Toure-Davis Aff. ¶ 8).

[16] Plaintiff Toure-Davis declares receiving $150 (twice) from her brother, $200 (once) from her Aunt and cash from a few friends ranging from $40 to $80.  ECF No. 44-2 at 3.  Plaintiff Toure-Davis does not specify how many friends gave her money.  For purposes of this table the court assumes Plaintiff Toure-Davis received $40 (once) and $80 (once) from friends.

Mr. Horne's residence) is equivalent to wages.  Plaintiff Toure-Davis has conceded as much in her October 3, 2013 interrogatory response concerning her housing arrangement.  The interrogatory and her response are as follows:

> *Interrogatory No. 25*:
> Please describe your current living condition and[/] or arrangement.  Please include your current address, full name of all occupants in the household, size of your physical space, amount of expenditures paid by you and/or services provided by you as a contribution to the household, duration of your tenancy, how you come to live there and your expected date to move.
>
> *Plaintiff's Response to No. 25*:
> I live temporarily at 1924 Vermont Avenue, Landover, Maryland 20785.  The owner is Mr. Horne.  We are the only two occupants in the house.  I sleep in the basement. I started to help him with some cleaning and cooking and he would pay me for services, at first.  When I needed a place to stay and asked him, he accepted.  He was not required to pay for services anymore since he provided me with a place to stay.  Mr. Horne has been nice and let me stay but has told me that he will need his space back. . . .

ECF No. 50 at 11-12.

Plaintiff Toure-Davis' response to Interrogatory No. 25 reveals she was **paid** by Mr. Horne for some cleaning and cooking.  She failed to list this income on her affidavit.  She also failed to identify when she earned this income or the total amount she earned.  This income was earned *after* her return to the United States in mid-December 2010; therefore, any records of payment would not have been maintained at the 7648 Mandan Road residence and subsequently discarded.  *See* ECF No. 44-2 at 2 (Toure-Davis Aff. ¶ 8).  Mr. Horne corroborates that he met Plaintiff Toure-Davis after mid-December 2010.  He met her in 2011.  ECF No. 44-3 at 1 (Horne Aff. ¶ 4).

"[T]he value of the housing subsidies should be included when calculating Plaintiff's annual income."  *Shumye*, 555 F. Supp. 2d at 1026.  This court finds Plaintiff Toure-Davis

residing rent free in Mr. Horne's home is equivalent to a housing subsidy and will be considered a benefit when calculating Plaintiff's annual income. Alternatively, this housing subsidy is a bartered service in exchange for Plaintiff Toure-Davis' cleaning and cooking. Although no cash was exchanged between Mr. Horne and Plaintiff Toure-Davis, Mr. Horne identified the monetary value of the lodging he provided. Regardless of how this housing subsidy is characterized, there is an assigned value for this provided service.

In answering Interrogatory No. 25 Plaintiff Toure-Davis failed to state when she moved into Mr. Horne's residence. A date however is mentioned in Mr. Horne's affidavit. "In August of 2012, Ms. Nathalie Toure-Davis called and explained her situation that she was in desperate need of a place of stay." ECF No. 44-3 at 1 (Horne Aff. ¶ 4). This court therefore finds Plaintiff Toure-Davis began residing at Mr. Horne's residence as of August 1, 2012 at a monthly value of $600. "A sponsor's financial obligation under the affidavit of support should be reduced by the amount of any income or benefits the sponsored immigrant receives from other sources." *Cheshire v. Cheshire*, No. 3:05-cv-00453-TJC-MCR, 2006 WL 1208010, at *6 (M.D. Fla. May 4, 2006). For the year 2012 the court will include an additional $3,000 (5 months x $600), raising the total amount of income from sources other than Defendant Davis to **$3,950**. For the year 2013 the court will include an additional $7,200 (12 months x $600), raising the total amount of income from sources other than Defendant Davis to **$10,547**.

Finally, in her motion, Plaintiff Toure-Davis discloses she "currently receives means tested benefits and assistance from the State of Maryland." ECF No. 44 at 4. Plaintiff Toure-Davis fails to disclose when she began receiving means-tested benefits and assistance from the State of Maryland and further fails to disclose the monthly amount or monthly value of the benefits and assistance. This court *presumes* Plaintiff Toure-Davis became eligible to receive

means-tested benefits and assistance sometime *after* mid December 2010 when she returned to this country from her native country of Cote D'Ivoire.

It is unclear to this court, if Plaintiff is receiving means-tested benefits and assistance from the State of Maryland, why she failed to provide any records documenting the monetary value of these benefits and assistance.  Because Plaintiff concedes her income was at 125 percent of the Federal poverty line for the year 2011 but not for the years 2012 and 2013, this court must *defer* its ruling on whether Defendant Davis met or failed to meet his obligation of providing support *until* Plaintiff Toure-Davis supplements the record by filing an affidavit listing the monetary value of the means-tested benefits and assistance she has received from the State of Maryland, the type of means-tested benefits and assistance received, *e.g.*, food stamps or housing voucher, and the dates such benefits and assistance were received.  Plaintiff Toure-Davis is further directed to supplement the record by disclosing in her affidavit the amount of money Mr. Horne paid her for cleaning and cooking, as well as the approximate dates she received payment for these services she provided.  Moreover, Plaintiff Toure-Davis must disclose when her residency at Mr. Horne's house began and, if she moved into his home in August 2012, she must identify where she resided from January 2011 to July 2012.  Additionally, Plaintiff Toure must declare whether she paid rent, resided someplace rent free or, provided services and, in lieu of payment, was given a place to reside.  The amount of the rent or the value of housing subsidy must be disclosed.

    2.  *Income from Defendant Davis*

        *a. $70,000 Divorce Settlement*

Plaintiff Toure-Davis claims the divorce settlement of $70,000, paid by Defendant Davis pursuant to a court decree, was for properties incident to their marriage.  As such, Plaintiff

Toure-Davis asserts the divorce property settlement is not income for purposes of Form I-864. *See* ECF No. 44 at 5.   In his cross-motion Defendant Davis argues the $70,000 divorce settlement is income.

In the Order of June 11, 2004, the Circuit Court for Prince George's County, Maryland, decreed,

> **ORDERED**, by agreement of the parties, that in settlement of all property claims incident to the marriage, [Charles G. Davis] shall pay the sum of Seventy Thousand Dollars ($70,000.00) to [Nathalie Toure-Davis] in three (3) installments.  The first payment in the amount of Twenty Eight Thousand Dollars ($28,000.00) shall occur at the time of signing this Order; the second payment of Two Thousand Dollars ($2,000.00) shall occur upon [Nathalie Toure-Davis'] return from Africa in July 2004; the final installment in the amount of Forty Thousand Dollars ($40,000.00) shall occur by January 2005[.]

ECF No. 29-7 at 4.

In determining whether a sponsor has sufficient income to support a sponsored immigrant at a minimum of 125 percent of the Federal poverty line, Form I-864 utilizes the Internal Revenue Service ("IRS") rules.  This court therefore will consult the IRS rules regarding whether a property settlement incident to a divorce is treated as income.

Among the subjects addressed by IRS Publication 504 are <u>Property Settlements - Transfer Between Spouses</u>.

> Generally, no gain or loss is recognized on a transfer of property from you to (or in trust for the benefit of):
>
> - Your spouse, or
>
> - Your former spouse, but only if the transfer is incident to your divorce.
>
> This rule applies even if the transfer was in exchange for cash, the release of marital rights, the assumption of liabilities, or other consideration.

*                                    *                                    *

**Property subject to nonrecognition rule.**  The term "property" includes all property whether real or personal, tangible or intangible, or separate or community.  It includes property acquired after the end of your marriage and transferred to your former spouse.  It does not include services.

Internal Revenue Service, Publication 504, *Divorced or Separated Individuals*, http://www.irs.gov/publications/p504/ (last visited January 28, 2015).

The court in the *Shumye* case was confronted with a similar issue.  That court found the $49,000 payment to the sponsored immigrant spouse was a settlement of the former couple's California community property rights.  The payment was made without prejudice to the sponsored immigrant ex-spouse's rights or claims arising from the sponsorship obligation of the U.S. born spouse.  "The $49,000 represents the value of Plaintiff's existing assets (e.g. her share of the family home) and not income earned by Plaintiff within that specific year."  *Shumye*, 555 F. Supp. 2d at 1025.  In this case the court finds the $70,000 Defendant Davis paid to Plaintiff Toure-Davis in 2004 and 2005 is a settlement of all property claims incident to their marriage and thus shall <u>not</u> be classified as income earned by Plaintiff in 2004 and 2005.

### b. Housing & Housing Related Expenses

Plaintiff Toure-Davis claims the mortgage payments made by Defendant Davis during the period she and the two minor children resided at 7648 Mandan Road do not reduce Defendant Davis' annual obligation to support her because the mortgage payments were in consideration of the children.  *See* ECF No. 44 at 5.  In his cross-motion Defendant Davis rejects this assertion and notes Plaintiff, as well as the minor children, benefited.  In his reply Defendant Davis contends "[h]ousing cost is a critical measure in any assessment of poverty threshold, since poverty is a measure of the bare minimum income necessary to provide food, clothing and housing.  Plaintiff would have had housing cost with or without the children."  ECF No. 50 at 10.

The court agrees with Defendant Davis.  The value of the housing subsidies paid by Defendant Davis and received by Plaintiff Toure-Davis shall count toward her annual income and shall mitigate Defendant's financial obligation under Form I-864 for the calendar years 2003 to 2010.

Plaintiff Toure-Davis does not dispute that on September 30, 2002 Defendant Davis purchased a townhouse on Mandan Road at a cost of $190,000 for Plaintiff Toure-Davis to reside.  *See* ECF No. 45, Ex A (Davis Aff. at 2, ¶ 17).  Defendant Davis subsequently transferred ownership of the townhouse to Plaintiff Toure-Davis on June 17, 2004 via a Quitclaim Deed as recorded in the Land Records of Prince George's County, Maryland.  *Id.*, Ex. A (Davis. Aff. at 2, ¶ 19; ECF No. 29-4 (June 17, 2004 Quitclaim Deed).  This transfer is confirmed by Plaintiff Toure-Davis.  "[T]he State Court ordered Defendant to execute a quitclaim deed and to transfer his interest in the property at 7648 Mandan Road, Greenbelt, Maryland to the Plaintiff.  Defendant complied with the order."  ECF No. 46 at 4.

In support of his cross-motion for summary judgment Defendant attaches multiple IRS Forms 1098, Mortgage Interest Statement, for the years 2004 through 2010.  Plaintiff Toure-Davis, although she characterizes housing as "not income," generally agrees with the dollar amount Defendant Davis claims he paid on a yearly basis.  *Compare* ECF No. 45 at 14-18 *with* ECF No. 46 at 5-6.  This court finds Defendant Davis' financial obligation to support Plaintiff Toure-Davis is reduced by the housing subsidy for the following years:

a) 2003[17]                **$17,460.84**

b) 2004                **$17,460.84**[18]

---

[17] Defendant Davis did not produce an IRS Form 1098 for the year 2003.  Both parties nevertheless agree Defendant Davis, not Plaintiff Toure-Davis, paid the mortgage in 2003.

[18] In reviewing the Form 1098 for the year 2004, the payments made by Defendant Davis total $17,473.32, a difference of $12.48.  *See* ECF No. 45, Ex. 4.

c) 2005                                    **$17,691.46**[19]

d) 2006                                    **$18,635.62**

e) 2007                                    **$18,968.33**

f) 2008                                    **$20,699.52**

g) 2009                                    **$21,499.36**

ECF No. 45, Exs. 4-10.

Defendant Davis' support of Plaintiff Toure-Davis extended beyond paying the mortgage.  He also paid all housing related expenses to include gas and electric, telephone, water bill, cell phone, lawn care, cable television, and repairs.  Defendant Davis claims monthly costs for these expenses as follows:  a) $160 for gas and electric, b) $230 for telephone, c) $25 for water, d) $42 for cell phone, e) $30 for lawn care, f) $64 for cable television, and g) $304 for repairs for a total monthly expense of $855.  The amounts identified by Defendant Davis, except for cable television[20], are identical to the amounts listed by Plaintiff Toure-Davis on a Financial Statement dated December 9, 2003 filed with the Circuit Court for Prince George's County, Maryland.  *Compare* ECF No. 45 at 15-17 *with* ECF No. 50-1.  On a yearly basis the monthly expenses of $855 totals $10,260.  This court finds Defendant Davis' financial obligation to support Plaintiff Toure-Davis is reduced by **$10,260** annually between 2003 and 2008 and reduced by **$5,130** for the first six months[21] of 2009.

---

[19] In reviewing the Form 1098 for the year 2005, the payments made by Defendant Davis total $17,694.64, a difference of $3.18.  *See id.*, Ex. 5.

[20] In his cross-motion Defendant Davis claims he paid cable television in the amount of $804 each year from 2003 to 2008.  *See* ECF No. 44 at 15-17.  According to the Financial Statement filed by Plaintiff Toure-Davis in the state court proceeding, her monthly cable television bill was $64.  *See* ECF No. 50-1 at 5.  Based on this figure, the yearly expense for cable television would be $768.  When comparing the $804 figure for cable television with the other utilities and expenses associated with the townhouse, it appears Defendant Davis listed a yearly amount for cable television but listed a monthly amount for all other bills.  The court therefore accepts the $64 amount as the *monthly* cable television expense.

[21] The court is aware that some expenses, such as utilities, continued after June 30, 2009.  Other expenses, such as cable television, should have been discontinued at least by the fall of 2009 when Plaintiff Toure-Davis and the minor

*c. Transportation Expenses*

Defendant Davis also paid Plaintiff Toure-Davis' transportation expenses on an annual basis, namely automobile insurance ($1,200) and automobile repairs ($804) for a total of $2,004. This court finds Defendant Davis' financial obligation to support Plaintiff Toure-Davis is reduced by **$2,004** annually between 2003 and 2008 and reduced by **$1,002** for the first six months of 2009.

*d. Miscellaneous Expenses: Vacation, Entertainment & Appliances*

Defendant Davis provided additional financial support to Plaintiff Toure-Davis for appliances ($50), vacation ($266[22]) and entertainment ($90[23]).  Plaintiff Toure-Davis disputes the inclusion of the vacation expense since, according to her, Defendant Davis cannot determine what amount was used directly by Plaintiff Toure-Davis.  *See* ECF No. 46 at 5-6.  However, Plaintiff's December 9, 2003 Financial Statement reflects a $266 monthly vacation expense for *herself* and no money allocated for the minor children.  *See* ECF No. 50-1 at 5.  The court finds the total substantiated monthly miscellaneous expense was $406.  The court further finds Defendant Davis' financial obligation to support Plaintiff Toure-Davis is reduced by **$4,872** annually between 2003 and 2008 and reduced by **$2,436** for the first six months of 2009.

*e. Alimony*

Plaintiff Toure-Davis concedes the alimony Defendant Davis paid is income.  Defendant Davis paid Plaintiff Toure-Davis $600 per month from January 2003 (under the terms of the March 29, 2001 Agreement of Separation, *see* ECF No. 29-2 at 3) through March 2007 (pursuant

---

children did not return to the United States.  Defendant Davis has not submitted documentation proving what housing related expenses he paid *after* June 30, 2009.  For ease of application and for consistency, the court will credit Defendant Davis for expenses paid between January 1 through June 30, 2009 or for a period of six months.
[22] Defendant Davis listed the yearly expense of $3,192 rather than the monthly expense of $266.
[23] It is unclear to the court how Defendant Davis calculated a yearly (or monthly) entertainment expense of $480. Based on Plaintiff Toure-Davis' December 9, 2003 Financial Statement, Plaintiff's entertainment expenses (excluding vacation and cable television) was $90 per month consisting of video/theater ($40) and dining out ($50).

to June 11, 2004 Order from the Circuit Court for Prince George's County, Maryland, *see* ECF No. 29-7 at 3).[24]  This court finds Defendant Davis' financial obligation to support Plaintiff Toure-Davis is reduced by **$7,200** annually between 2003 and 2006 and reduced by **$1,800** for the first three months of 2007.[25]

### f. Financial Support while Plaintiff & Children Resided in Cote D'Ivoire

Plaintiff Toure-Davis left the United States with the two minor children on or about June 30, 2009.  Except for a brief return in September of 2009, Plaintiff Toure-Davis and the minor children resided in Cote D'Ivoire until their return to the United States on December 14, 2010.  Beginning in December 2009, Defendant Davis sent money to Plaintiff Toure-Davis via Western Union.  *See* ECF No. 45, Ex. 12.  Defendant Davis wired $500[26] to Plaintiff Toure-Davis on December 31, 2009.  In 2010 Defendant Davis wired Plaintiff Toure-Davis a total of $26,600[27] between January 8, 2010 and December 10, 2010.  *Id.*

In her reply Plaintiff Toure-Davis disputes the $510 payment via Western Union because it is "unclear as to whether this was for [the] children or Plaintiff."  ECF No. 46 at 6.  For the year 2010 Plaintiff disputes the $24,863[28] in payments via Western Union on the identical ground.  *Id.*  Defendant Davis continued to pay the mortgage on the 7648 Mandan Road residence in 2010 even though Plaintiff Toure-Davis and the children no longer resided in that

---

[24] "**ORDERED**, that [Charles G. Davis] shall pay Six Hundred Dollars ($600.00) per month as alimony to [Nathalie Toure-Davis] for two (2) years and nine (9) months from the date of this Order. . . ."

[25] In his cross-motion Defendant Davis claims he paid alimony to Plaintiff Toure-Davis beyond the period ordered by the Circuit Court for Prince George's County, Maryland.  Defendant Davis contends he paid alimony as follows: $7,200 in 2007, $7,200 in 2008 and $4,200 in 2009.  *See* ECF No. 45 at 17-18.  Defendant Davis has not presented any evidence demonstrating such payments were made.  In her affidavit listing sources of income or benefits other than Defendant Davis, for the year 2007, Plaintiff Toure-Davis declares, "[a]fter Mr. Davis' alimony payments ended. . . ."  ECF 44-2 at 3 (Toure-Davis Aff. ¶ 9g).  The court declines to credit Defendant Davis for any alleged alimony payments after March 2007.

[26] Defendant Davis lists the amount provided via Western Union on December 31, 2009 as $510.  *See* ECF No. 45 at 18.  Western Union charged a service fee of $10.50.  *See* ECF No. 45, Ex. 12 at 1.  Because Plaintiff Toure-Davis did not receive $510, only $500, the court excludes from consideration the service fee charged by Western Union and paid by Defendant Davis.

[27] This amount *excludes* service fees charged by Western Union.

[28] It is unclear to the court how Plaintiff determined this amount.

home.   Plaintiff Toure-Davis was the legal owner of the townhouse.   She does not dispute Defendant Davis made mortgage payments totaling $21,311.09 in 2010, *see* ECF No. 45, Ex. 10, but argues this housing "subsidy" does not count as income.   *See* ECF No. 46 at 6.

In the March 28, 2014 Memorandum Opinion, the court requested the parties to address whether Defendant Davis had an obligation to support Plaintiff while she resided in her native country between the summer of 2009 and December 14, 2010.   Plaintiff Toure-Davis did not address the matter.   "The Defendant respectfully responds believ[ing] the issue to be moot due to the fact that the defendant continued to provide financial support for the plaintiff[] in the form of payments for her housing cost while she was outside the country as well as cash payments paid directly to her through western union money grams."   ECF No. 50 at 1.

Plaintiff Toure-Davis admits receiving cash payments via Western Union from Defendant Davis between December 2009 and December 2010.   She notes however it is unclear whether these payments were made for the children or for her.   *See* ECF No. 46 at 6.   The yearly child support payments from Defendant Davis totaled $24,000.   The amount of the monthly child support payment was presumably calculated based on the children's residency in the State of Maryland.   Plaintiff Toure-Davis removed her children not only from Maryland, but from the United States of America.   Whether Defendant Davis' monthly child support payment would remain the same, be reduced based on the cost of living in Cote D'Ivoire, or be suspended based on the "unauthorized" removal of the minor children from the United States of America is not certain.   For purposes of resolving the cross-motions, the court will assume the yearly child support payments totaling $24,000 continued in 2010.   Therefore, the court finds only $2,600 of the $26,600 cash payments via Western Union from Defendant Davis were for the benefit of Plaintiff Toure-Davis.

The court agrees the issue is moot.  This court finds Defendant Davis' financial obligation to support Plaintiff Toure-Davis while she resided in Cote D'Ivoire is reduced by **$500** for the year 2009 and reduced by **$23,911.09** for the year 2010.

*g. Annual Financial Support by Defendant Davis during Relevant Years*

The court summarizes below the total amount of financial support Defendant Davis provided Plaintiff Toure-Davis during the years 2003 through 2010 and 2012 through 2013.

| Year | Financial Support from Defendant Davis |
|------|----------------------------------------|
| 2003 | $41,796.84 |
| 2004 | $41,796.84 |
| 2005 | $42,027.46 |
| 2006 | $42,971.62 |
| 2007 | $37,904.33 |
| 2008 | $37,835.52 |
| 2009 | $30,567.36 |
| 2010 | $23,911.09 |
| 2012 | $0 |
| 2013 | $0 |

*h. Support Received versus 125 percent of Federal Poverty Line*

Having calculated the financial support Plaintiff Toure-Davis received from sources other than Defendant Davis, as well as the financial support Plaintiff Toure-Davis received from Defendant Davis, the court now determines whether the support received met at a minimum 125 percent of the Federal poverty line for the relevant years.

| Year | Support from Other Sources | Support from Def. Davis | Total Financial Support | 125% Poverty Guidelines | Damages Owed |
|------|----------------------------|-------------------------|-------------------------|-------------------------|--------------|
| 2003 | $0[29] | $41,796.84 | $41,796.84 | $11,225.00 | $0 |
| 2004 | $0 | $41,796.84 | $41,796.84 | $11,637.50 | $0 |
| 2005 | $0 | $42,027.46 | $42,027.46 | $11,962.50 | $0 |
| 2006 | $0 | $42,971.62 | $42,971.62 | $12,250.00 | $0 |

---

[29] The court excludes $1,500 received by Plaintiff Toure-Davis from her pastor to pay her attorney's fees since this loan was repaid.

| 2007 | $620.00 | $37,904.33 | $38,524.33 | $12,762.50 | $0 |
| 2008 | $0 | $37,835.52 | $37,835.52 | $13,000.00 | $0 |
| 2009 | $5,334.00 | $30,567.36 | $35,901.36 | $13,537.50 | $0 |
| 2010 | $0 | $23,911.09 | $23,911.09 | $13,537.50 | $0 |
| 2012 | $3,950.00 | $0 | $3,950.00 | $13,962.50 | $10,012.50 |
| 2013 | $10,547.00 | $0 | $10,547.00 | $14,362.50 | $3,815.50 |

The damages owed by Defendant Davis for the years 2012 and 2013 shall be offset by the unknown value of the means-tested benefits Plaintiff Toure-Davis received.[30]  "Plaintiff currently receives means tested benefits and assistance from the State of Maryland."  ECF No. 44 at 4.  The court directs Plaintiff Toure-Davis to provide the value of the means-tested benefits and assistance from the State of Maryland from 2012 to the present within 45 (forty-five) days from the date of this memorandum opinion.

D.    *Attorney's Fees and Costs*

Plaintiff Toure-Davis seeks attorney's fees and costs associated with enforcing the Form I-864, Affidavit of Support.  As of the filing of her motion Plaintiff Toure-Davis has incurred $32,854.30 in attorney's fees and costs.  *See* ECF No. 44 at 7.  Defendant Davis acknowledges the court's authority to award attorney's fees and costs but contends the fees requested are "unreasonable and unconscionable."  ECF No. 45 at 20.  Defendant Davis asks the court to "reserve[] on the issue of such fees pending the final determination of all issues."  *Id.* at 21.  Because there are some matters outstanding, the court finds Defendant Davis' request reasonable and hereby **defers** on the issue of attorney's fees and costs pending resolution of all issues.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment on the issue of damages will be denied in part and held in abeyance in part.  Defendant's cross-motion for

---

[30] The State of Maryland may seek reimbursement from Defendant Davis.  *See* 8 U.S.C. § 1183a(b)(1)(A) ("Upon notification that a sponsored alien has received any means-tested public benefit, . . . the appropriate entity of the Federal Government, a State, or any political subdivision of a State shall request reimbursement by the sponsor in an amount which is equal to the unreimbursed costs of such benefit.").

partial summary judgment on the issue of damages will be granted in part and held in abeyance in part.  Plaintiff must supplement the record within forty-five (45) days of the date of this memorandum opinion on the following matters:  (a) the yearly amount of means-tested benefits and assistance she received from the State of Maryland from 2012 to the present along with a description of the type of benefits and assistance received, (b) 2014 Form W-2s and 2014 Federal and Maryland Tax Returns, (c) any 2015 pay stubs, (d) the total amount (by year) Plaintiff was paid by Arthur Horne for services provided (cleaning and cooking), and (e) the address(es) of the place(s) where Plaintiff resided in 2011 and 2012 and whether she paid for housing or received some form of housing assistance.

March 4, 2015  
      Date

_____/s/_____  
WILLIAM CONNELLY  
UNITED STATES MAGISTRATE JUDGE