# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **NATHALIE TOURE-DAVIS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. WGC-13-916** |
| | ) | |
| **CHARLES G. DAVIS** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Nathalie Toure-Davis, a legal permanent resident of the United States, initiated this lawsuit against her former husband, Defendant Charles G. Davis, a United States citizen, seeking to enforce Defendant's obligation to support her in accordance with an affidavit of support he signed after the couple married. The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment. *See* ECF No. 35 ¶ 7[1]. In the Memorandum Opinion of March 28, 2014, the undersigned found Defendant is obligated to support his immigrant ex-spouse to maintain her income at a minimum of 125 percent of the Federal poverty line. Defendant knowingly, voluntarily and willingly assumed this obligation when he signed Form I-864, *Affidavit of Support Under Section 213A of the Act*, on October 28, 1999. *See* ECF No. 44-1 at 6. The memorandum opinion however did not address whether Defendant has breached that obligation since the couple's separation in June of 2001.

In order to determine whether Defendant has breached *or* satisfied his obligation, Plaintiff must submit an affidavit with supporting documentation evidencing, on a yearly basis, any income or

---

[1] This case was referred to the undersigned on October 31, 2013. *See* ECF No. 37.

> benefits she received from sources *other than Defendant* since June of 2001.  She has the burden of demonstrating the exact amount of support owed.  Plaintiff should also submit an itemization of legal costs she incurred to enforce the Form I-864 (affidavit of support).

ECF No. 42 at 18 (footnote omitted).

Because the record before the court demonstrated some level of financial support of Plaintiff by Defendant, the undersigned directed Defendant to submit an affidavit with supporting documentation evidencing, on a yearly basis, the amount of financial support he provided to Plaintiff since their separation in June of 2001.  *Id.*  The undersigned directed the parties to file cross-motions discussing what damages, if any, Plaintiff is entitled to receive.  The parties filed supplemental briefs as ordered.  In the Memorandum Opinion of March 4, 2015, the undersigned determined Defendant did not owe any damages to Plaintiff for the years 2003 - 2010.  The undersigned determined preliminarily that Defendant owes Plaintiff $10,012.50 in damages for 2012 and $3,815.50 in damages for 2013.  ECF No. 51 at 22.  The damages Defendant owed would be offset by the value of means-tested benefits Plaintiff received.  Plaintiff claimed she received means-tested benefits in 2012 and 2013 but she failed to disclose the value of those benefits.  Further the undersigned deferred consideration of Plaintiff's claims for damages for 2014 pending the receipt of additional information.  *See id.* at 7 n.3.  The undersigned directed Plaintiff to supplement the record with regard to the following matters:

> (a) the yearly amount of means-tested benefits and assistance she received from the State of Maryland from 2012 to the present along with a description of the type of benefits and assistance received, (b) 2014 Form W-2s and 2014 Federal and Maryland Tax Returns, (c) any 2015 pay stubs, (d) the total amount (by year) Plaintiff was paid by Arthur Horne for services provided (cooking and cleaning), and (e) the address(es) of the place(s) where Plaintiff resided in 2011 and 2012 and whether she paid for housing or received some form of housing assistance.

*Id.* at 23.

In the accompanying Order the undersigned denied in part and held in abeyance in part Plaintiff's motion for partial summary judgment on the issue of damages.  Defendant's cross-motion for partial summary judgment on the issue of damages was granted in part and held in abeyance in part.  *See* ECF No. 52.

Plaintiff supplemented the record as ordered by filing an affidavit with exhibits on April 17, 2015.  ECF No. 53.  Upon reviewing this affidavit and re-reading the Memorandum Opinion of March 4, 2015, the undersigned found additional gaps in information.  On May 14, 2015 the undersigned issued an Order directing,

> Plaintiff to supplement the record via affidavit regarding her place of residence from 2014 to the present, as soon as practicable. Plaintiff's 2014 Form W-2 lists a Capitol Heights, Maryland address.  However, Plaintiff's 2014 Federal and Maryland Tax Returns list a Landover, Maryland address, which is the residence of Arthur Horne.  In her affidavit Plaintiff must list not only every place she lives/lived in 2014 and in 2015 but furthermore whether she paid rent or received housing assistance or benefit and the monthly amount of the rent or housing assistance.  The court notes Arthur Horne's affidavit is dated 21 May 2014.

ECF No. 54.  Plaintiff filed an additional affidavit on June 8, 2015 addressing the issues as requested by the court.  *See* ECF No. 55.  Pending before the court and ready for resolution are the portion of Plaintiff's motion for partial summary judgment on the issue of damages (ECF No. 44) held in abeyance and the portion of Defendant's motion for partial summary judgment on the issue of damages (ECF No. 45) held in abeyance.  No hearing is deemed necessary and the court now rules pursuant to Local Rule 105.6 (D. Md. 2014).

## **BACKGROUND**

The parties are referred to the March 28, 2014 Memorandum Opinion for the factual background.  *See* ECF No. 42 at 1-4.

**STANDARD OF REVIEW**

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing no genuine issue as to any material fact exists.  Fed. R. Civ. P. 56(a); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.

On those issues where the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *Anderson*, 477 U.S. at 256.  However, "' [a] mere scintilla of evidence is not enough to create a fact issue.'"  *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388

F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959 (1968)).  There must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

When faced with cross-motions for summary judgment, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted).  The court applies the same standard of review. *Monumental Paving & Excavating, Inc. v. Penn. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) (citing *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment – – even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied*, 469 U.S. 1215 (1985)).

## DISCUSSION

A.    *Adjustment to Damages Owed for the Year 2012*

In the Memorandum Opinion of March 4, 2015 the undersigned summarized the support Plaintiff Toure-Davis received from sources other than Defendant Davis plus the support Plaintiff Toure-Davis received from Defendant Davis which yielded the total financial support received.  The undersigned compared that figure to 125 percent of the Federal poverty line to determine what damages, if any, Defendant Davis owes Plaintiff Toure-Davis.  The various amounts for the years 2003 - 2010, 2012 - 2013 are reflected in the following table from the March 4, 2015 opinion.

| Year | Support from Other Sources | Support from Def. Davis | Total Financial Support | 125% Poverty Guidelines | Damages Owed |
|------|------|------|------|------|------|
| 2003 | $0[2] | $41,796.84 | $41,796.84 | $11,225.00 | $0 |
| 2004 | $0 | $41,796.84 | $41,796.84 | $11,637.50 | $0 |
| 2005 | $0 | $42,027.46 | $42,027.46 | $11,962.50 | $0 |
| 2006 | $0 | $42,971.62 | $42,971.62 | $12,250.00 | $0 |
| 2007 | $620.00 | $37,904.33 | $38,524.33 | $12,762.50 | $0 |
| 2008 | $0 | $37,835.52 | $37,835.52 | $13,000.00 | $0 |
| 2009 | $5,334.00 | $30,567.36 | $35,901.36 | $13,537.50 | $0 |
| 2010 | $0 | $23,911.09 | $23,911.09 | $13,537.50 | $0 |
| 2012 | $3,950.00 | $0 | $3,950.00 | $13,962.50 | $10,012.50 |
| 2013 | $10,547.00 | $0 | $10,547.00 | $14,362.50 | $3,815.50 |

ECF No. 51 at 21-22.

In her April 17, 2015 Affidavit Plaintiff Toure-Davis disclosed, contrary to her earlier representations, that she "did not receive any means-tested benefits from the United States Federal Government or the State of Maryland in 2012." ECF No. 53 at 1 (Toure-Davis Aff. ¶ 3). Although she did not receive any governmental means-tested benefits, Plaintiff Toure-Davis received other benefits in 2012 which necessitate an adjustment in the amount of support from other sources she received.

As previously documented Plaintiff Toure-Davis began residing with Arthur Horne in August of 2012. She did not pay rent. Mr. Horne would have charged her $600.00 per month. She therefore received a housing benefit of $3,000.00 between August and December 2012. From January 2012 to July 2012 Plaintiff Toure-Davis lived in a small bedroom of Ms. Elaine James' home in Landover, Maryland. "I did not pay any rent but if I had to pay rent, I would have had to pay no more than $200.00 per month."[3] ECF No. 53 at 2 (Toure-Davis Aff. ¶ 16).

---

[2] The court excludes $1,500 received by Plaintiff Toure-Davis from her pastor to pay her attorney's fees since this loan was repaid.

[3] "I estimate that if I had to pay rent to Ms. James, I would have had to pay no more than $200.00 [per month]. I based this estimate on the fact that another gentleman rented a room from Ms. James at the same time that I was there. He was required to pay approximately $50.00 per week." ECF No. 53 at 2 (Toure-Davis Aff. ¶ 15).

The undersigned therefore finds Plaintiff Toure-Davis received an additional **$1,400.00** in housing benefits between January and July 2012.

Plaintiff Toure-Davis acknowledges being paid for services on two occasions by Mr. Horne.

> I received the total of $150.00 from Mr. Arthur Horne approximately in July of 2012.  I first received a cash payment of $100.00 and another cash payment of $50.00.  The payments were for me coming to assist him with cleaning.
>
> I have not received any other payments from Mr. Horne for services provided, i.e. cleaning and cooking.

ECF No. 53 at 2 (Toure-Davis Aff. ¶¶ 10-11).  The undersigned therefore finds **$150.00** should be added to the total amount of support from other sources in 2012.  In conclusion, the undersigned finds the total amount of support from other sources in 2012 equals **$5,500.00**.[4] This increase necessitates an adjustment to the amount of damages owed by Defendant Davis as reflected below:

| Year | Support from Other Sources | Support from Def. Davis | Total Financial Support | 125% Poverty Guidelines | Damages Owed |
|------|------|------|------|------|------|
| 2012 | $5,500.00 | $0 | $5,500.00 | $13,962.50 | **$8,642.50** |

B.     *No Adjustment to Damages Owed for Year 2013*

Plaintiff Toure-Davis began to receive means-tested benefits through the Maryland Department of Social Services in 2013.

> In 2013, I first received basic medical coverage through Maryland Primary Adult Care (PAC) program.  Maryland PAC provides free visits to family doctors, cover outpatient mental health care and prescription medication for free or at a low co-pay.  I did not use any medical services in 2013.

ECF No. 53 at 1 (Toure-Davis Aff. ¶ 4).

---

[4] This amount consists of (a) $3,950.00 [previously documented], (b) $1,400.00 housing benefit from Ms. James and (c) $150.00 payment from Mr. Horne.

Plaintiff Toure-Davis did not receive any support from Defendant Davis in 2013.   The support received from other sources, totaling $10,547.00, was delineated in the Memorandum Opinion of March 4, 2015.   *See* ECF No. 51 at 10, 12.   Defendant Davis owes **$3,815.50** in damages to Plaintiff Toure-Davis for the year 2013 as explained below.

| Year | Support from Other Sources | Support from Def. Davis | Total Financial Support | 125% Poverty Guidelines | Damages Owed |
|------|------|------|------|------|------|
| 2013 | $10,547.00 | $0 | $10,547.00 | $14,362.50 | **$3,815.50** |

C.      *Calculation for Year 2014*

The undersigned deferred addressing the year 2014 in the Memorandum Opinion of March 4, 2015 due to a lack of information, but with the supplemental filings by Plaintiff Toure-Davis, the undersigned now turns his attention to this matter.

In 2014 Plaintiff Toure-Davis' earnings were extremely limited, totaling **$4,338.84** from her employment with Simply Fashion Stores, Ltd.   *See* ECF No. 53-1 at 1.   According to her April 17, 2015 Affidavit Plaintiff Toure-Davis received Medicaid when her eligibility for Maryland PAC ended.   Medicaid paid medical costs totaling **$1,284.50** in 2014.   Further, "[i]n October of 2014, Defendant Charles G. Davis provided Plaintiff with a check in the amount of $3,500.00 to cover medical costs during the period of time when her Medicaid insurance terminated."   ECF No. 53 at 2 (Toure-Davis Aff. ¶ 17).   Additionally, Plaintiff Toure-Davis continued to reside in Mr. Horne's home[5], without paying rent and thereby receiving a monthly housing benefit of $600.00 or a total of **$7,200.00** for the year 2014.   The amounts of financial support received and how the total financial support compares to 125 percent of the Federal poverty line are summarized below:

---

[5] "I currently reside at 1924 Vermont Avenue, Landover, Maryland, which is the residential address of Mr. Arthur Horne.   I did not live at any other address in 2014 nor in 2015 to present."   ECF No. 55 at 1 (Toure-Davis Aff. ¶ 1).

| Year | Support from Other Sources | Support from Def. Davis | Total Financial Support | 125% Poverty Guideline | Damages Owed |
|------|---------------------------|------------------------|------------------------|------------------------|--------------|
| 2014 | $12,823.34 | $3,500.00 | $16,323.34 | $14,487.50[6] | **$0** |

### D.   Calculation for Year 2015 (to date)

Based on the affidavits and records submitted by Plaintiff Toure-Davis, in 2015 she has received support from sources other than Defendant Davis as follows: (a) $271.00 (food supplement program in February and March 2015[7]), (b) $1,281.46 (gross income earned from Simply Fashion as of March 20, 2015[8]), (c) $3,000.00 ($600.00 per month housing benefit from Mr. Horne between January - May 2015) and (d) $300.00 ($300.00 per month[9] housing benefit from Mr. Horne for June 2015).   Plaintiff Toure-Davis thus has received income or benefits totaling **$4,852.46** from sources other than Defendant Davis in 2015.   The undersigned understands that Defendant Davis has not provided any financial support to date in 2015.

The poverty guideline for a household of one person in 2015 is $11,770.00.  *See* Annual Update of the HHS Poverty Guidelines, 80 Fed. Reg. 3236, 3237 (Jan. 22, 2015).  One hundred twenty-five percent of this Federal poverty line is **$14,712.50**.  This amount is equivalent to **$1,226.04** per month.  Based on this amount, Defendant Davis' obligation from January through

---

[6] The poverty guideline for a household of one person in 2014 was $11,670.00.  *See* Annual Update of the HHS Poverty Guidelines, 79 Fed. Reg. 3593 (Jan. 22, 2014).  $11,670.00 x 1.25 = $14,587.50.

[7] "In February of 2015, I began to receive benefits through the Food Supplement Program.  My eligibility for the Food Supplement Program covers the period of 02/15/2015 through 07/15/2015.  I received, thus far, $77.00 on 02/15 and $194.00 on 03/15/2015."  ECF No. 53 at 2 (Toure-Davis Aff. ¶ 8).  Presumably Plaintiff Toure-Davis continued to receive a monthly stipend on or about April 15, May 15 and June 15.  The amounts received are unknown.

[8] "Simply Fashion, my employer, filed for bankruptcy and the store I worked at 7057 Martin Luther King Jr Hwy, Landover Maryland 20785, went out of business.  My last day of work was May 13, 2015.  I do not work at the present time."  ECF No. 55 at 1 (Toure-Davis Aff. ¶ 5).  Plaintiff Toure-Davis submitted proof of her former employer filing for Chapter 11 bankruptcy protection.  *See* ECF No. 53-2 at 4-5.  No information has been provided about the total income earned by Plaintiff Toure-Davis between March 21 and May 13, 2015.

[9] "As a result of my loss of employment, Mr. Horne reduced my monthly rent cost from $600.00 to $300.00.  I am still unable to afford to pay Mr. Horne rent at this time."  ECF No. 55 at 1 (Toure-Davis Aff. ¶ 6).

June 2015 totals **$7,356.24** (minus financial support received from other sources).  Although the record is silent as to (a) the income earned from Plaintiff Toure-Davis' employment with Simply Fashion between March 21 to May 13, 2015 and (b) the amount of the monthly food supplement for April through June 2015, these additional benefits and income would not increase the total amount of financial support from sources other than Defendant Davis to $7,356.24.  Therefore, Defendant Davis is obligated to provide Plaintiff Toure-Davis financial support to reach this 125 percent level of the Federal poverty line for the first six months of 2015.

The undersigned directs Plaintiff's counsel to provide Defendant's counsel with additional information about Plaintiff Toure-Davis' earned income and receipt of benefits through June 2015.  Defendant's counsel, in turn, should advise her client to provide the difference between (a) 125 percent of the Federal poverty line for the first six months of 2015 and (b) the amount of financial support Plaintiff Toure-Davis has earned and/or received during the first six months of 2015 from other sources.  Henceforth the undersigned encourages the parties and their counsel to work cooperatively to ensure Defendant Davis provides financial support as he is obligated to do without the court's intervention.

## CONCLUSION

For the foregoing reasons, judgment will be entered against the Defendant in the amount of **$12,458.00** for the past support accumulated in 2012 and 2013.  The court notes that the Defendant is obligated to sponsor the Plaintiff at 125 percent of the Federal poverty line until his obligation expires by law.  The portion of Plaintiff's motion for partial summary judgment on the issue of damages, previously held in abeyance, will be granted and the portion of Defendant's cross-motion for partial summary judgment on the issue of damages, previously held in

abeyance, will be denied.  Accordingly, each party's motion for partial summary judgment on the issue of damages will be granted in part and denied in part.

In seeking to enforce the affidavit of support, Plaintiff incurred legal fees.  Defendant may be liable for "payment of legal fees and other costs of collection."  8 U.S.C. § 1183a(c). Plaintiff may file an appropriate motion and affidavit demonstrating her reasonable attorney's fees and costs within twenty-one (21) days after the date of the final order.  A final order will be issued after consideration of any corrections to the court's calculations suggested by counsel by *July 10, 2015*.

June 23, 2015                                     _____/s/_____
          Date                                                    WILLIAM CONNELLY
                                                          UNITED STATES MAGISTRATE JUDGE